### Application of TAMARCO TOWING CO.

Railroad & Public Utilities Commission.

January 21, 1953.

Douglas Shivers of Carswell, Cotton & Shivers, Tallahassee, M. G. Emmanuel, Tampa, and Paul E. Dixon of Graham, Dixon & Flynn, Tampa, for applicant.

Lewis H. Hill, Jr. and Frank A. McClung, both of Tampa, for Redwing Carriers, Inc., protestant.

Martin Sack, Jacksonville, for Petroleum Carrier Corp., protestant.

Chairman, JERRY W. CARTER, Commissioner WILBUR C. KING and Commissioner RICHARD A. MACK, participated in the hearing and disposition of this case.

BY THE COMMISSION.

The commission by its duly designated examiner, J. B. Norman, held a public hearing on this application in the City Hall Council Chamber, Tampa, on August 14, 1952. The examiner's proposed order was forwarded on November 6, 1952 to the parties of record in this proceeding. Exceptions to the examiner's report and proposed order were filed by Redwing Carriers, Inc. and Petroleum Carrier Corp., protestants herein, and the matter was set down for oral argument before the commissioners at which time the applicant and the protestants appeared through their respective attorneys and orally argued the cause.

By this application Tamarco Towing Co. seeks a certificate of public convenience and necessity to operate an auto transportation company as a private contract carrier of fuel oil, under contract with the Florida Power Corporation, from the corporation's plant at Inglis, as well as to several other of the corporation's plants, by barge. This application in effect seeks authority for an extension of this service so as to continue the transportation of fuel oil for the corporation by truck from Inglis to its new plant near Ellaville after the first unit is completed in February 1953. It appears that Inglis as a supply base has several advantages over Jacksonville as a distributing point, the chief advantages being less traffic on the proposed route and a saving of one-third in time for transportation on this route as compared to Jacksonville. It is estimated that this operation will require the continuous use of not less than 6 trucks and make necessary 65 round trips weekly. The transportation of fuel oil under this contract will be continuous and recurring.

It appears that the financial condition of Tamarco Towing Co. is sound and that it is able to provide all necessary equipment to carry out the proposed operation.

Both protestants are certificated common carriers with the right and authority to transport fuel oil and petroleum products over the

proposed route. The headquarters of Petroleum Carrier Corp. is Jacksonville and that of Redwing Carriers, Inc. is Tampa. Each protestant claims it has sufficient equipment to assign to this operation and can satisfactorily render the service which the Florida Power Corporation will require.

The protestants contend that the statutes require the commission to consider the effect the granting of authority to any contract carrier would have on transportation facilities in the territory sought to be served by the applicant and also the effect such new operation would have on transportation as a whole in the territory before any additional operating rights are authorized.

The applicant contends that this operation will not take away from either protestant any business which it now enjoys and consequently there will be no depletion of the revenues of either protestant, and that this application should not be denied in order to prevent ruinous competition, for it is based entirely on new business resulting from the growth and development of Florida.

Section 323.04(3), Florida Statutes 1951, among other things provides that—

> When application is made by an auto transportation company for a certificate to operate as a private contract carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission.

It has long been recognized that one of the primary reasons for the enactment of Florida's auto transportation law was to enable the public to have an adequate and sustained transportation system by protecting and conserving existing transportation facilities against ruthless, unbridled and destructive competition which, if unregulated might seriously impair and ultimately destroy not only itself but other transportation facilities to the public's damage.

The promiscuous granting of contract carriers' certificates would soon result in the complete destruction of the regulated common carriers of the state. No reasonable construction of the statutes, as presently written, would permit this regulatory agency to follow such a policy. Common carrier auto transportation companies operating under the jurisdiction of this commission are required to maintain sufficient facilities adequately to meet the transportation needs of the public. We do not believe that the legislature intended that contract carriers' certificates should be issued whenever the issuance of such additional operating rights would tend to jeopardize existing transportation facilities. If common

carrier auto transportation companies are to be required to maintain adequate facilities at all times to meet transportation needs of those who might call upon such carriers for their service, then such common carriers must be protected against additional operations unless it is satisfactorily shown that special circumstances exist which require special transportation service consistent with the transportation requirements of the public generally. The argument that the proposed operation involves only new business which has never been handled by existing common carriers is wholly without merit and does not take the present case out of the prohibitions of the statute.

Based on the record herein and the law involved in matters of this kind, we find: (1) that the granting of this application would be contrary to the express provisions of the statute and would jeopardize existing transportation facilities in the territory involved and would seriously threaten the financial soundness and stability of existing carriers now authorized to serve such territory in the transportation of fuel oil and other petroleum products, (2) that the maintenance of an adequate and sustained transportation system for the benefit of the public at large requires that the application be denied, and (3) that public convenience and necessity do not authorize the granting of the application.

It is therefore ordered that the application be and the same is hereby denied.